IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
BLUEFIELD DIVISION

| | |
|---|---|
| ETHELOMA RENEE PERKINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 1:17-cv-02039 |
| v. ) | |
| ) | |
| DISH NETWORK, LLC, ) | |
| ) | |
| Serve: Corporation Service Company ) | |
| 209 West Washington Street ) | |
| Charleston, WV 25302 ) | |
| ) | |
| Defendant. ) | |

COMPLAINT

COMES NOW plaintiff, ETHELOMA RENEE PERKINS ("Perkins" or "plaintiff"), by counsel, and for her Complaint states as follows:

1. This action arises under federal law, particularly Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e, *et seq.* ("Title VII"), jurisdiction being conferred thereby, based on her sex, female, and race, African-American.

2. Jurisdiction is conferred by 42 U.S.C. Section 2000e(f)(3).

3. Plaintiff, an African-American female, filed a charge of discrimination for violation of Title VII for discrimination on the basis of her sex, female, and her race, African-American, with the West Virginia Human Rights Commission on or about May 13, 2015. Her case was transferred by the Human Rights Commission ("HRC") to the Equal Employment Opportunity Commission ("EEOC") on or about October 20, 2016, which issued its Right to Sue, dated December 23, 2016. (*Exhibit*)

4. Plaintiff began her employment with DISH Network, LLC ("Dish" or "defendant") on or about September 28, 2008, as an Agent. After approximately seven months, plaintiff was promoted to Coach. She became a Trainer after working as a coach for less than two years, and continued as a Trainer for approximately four years, until she was terminated by Dish.

5. In 2012, plaintiff began traveling for Dish, both overseas and domestically, at times to train Loyalty and the rest to certify Trainers. On these occasions, she performed the duties of a (Traveling) Certification Trainer, although she did not have the title of, nor was she paid as, a Certification Trainer.

6. Plaintiff applied for the position of Traveling Certification Trainer during the spring/summer of 2013. Defendant was seeking to hire a team of Traveling Certification Trainersn. However, despite plaintiff's years of experience performing the precise duties of this position, she was not selected, while several Caucasian individuals were hired. In August 2013 defendant posted for an Operations Analyst position. Although this position had a different title, it was the same position/job duties as the formerly posted Traveling Certification Trainer. Defendant ordered her to withdraw her (second) application, and then selected approximately four (4) Caucasian individuals to add to the team above described. Plaintiff was as qualified/more qualified as/than all of the Caucasian individuals who were selected on both occasions, particularly since she had already been performing the duties of a (Traveling) Certification Trainer for an extended period of time. No African-American employees were selected.

7. Defendant, after having twice rejected plaintiff's applications (and selecting a number of other candidates, all Caucasian) continued to send her to perform the duties for this same position, Certification Trainer (aka: Operations Analyst) (without pay or title), within and without the

continental United States. These locations included, but were not limited to, the Philippines in July and September 2013; to Mexico in September 2013; to Phoenix, Arizona, twice, one time being June 2014; and to Christiansburg, VA on two occasions, one being in January 2014; clearly demonstrating defendant recognized plaintiff was well qualified for the positions.

8. Defendant had a practice of devising "stats" for each of the Trainers, which were posted on a "Dashboard," which included, but was not limited to, which classes each Trainer (including plaintiff) had taken, whether or not they had trained certain groups of new hires, scores on various "assessment tests," etc. An employee's stats could be manipulated by various means, including, but not limited to, whom the Training Manager selected to take classes, which would improve the employee's stats; whether or not the employee was permitted to train certain groups of new hires; whether or not the trainer was given additional opportunities by the Training Manager, etc.

9. During the Spring/Summer of 2014, Joshua Causin ("Causin") was hired as Training Manager, after defendant demoted a female who had previously held the position for almost three years. Plaintiff applied for this position but was rejected.

10. Causin made a practice of manipulating the Dashboard by selecting male Trainers to take certain classes and/or train certain groups of new hires, which would allow those Trainers to improve their stats. For example, Causin permitted Shane Harrison ("Harrison"), male Caucasian, to train a team of Dr. Dish Agents, despite the fact he had never completed the training certification process for that skill. Plaintiff had completed the process. Causin also allowed Harrison to take on additional leadership responsibility, giving him the opportunity to serve as the Acting Training Manager, allowing him to respond to emails, participate in conference calls, delegate his work to other Trainers, etc. Causin also gave the same preferential treatment to "Danny," another Caucasian

3

male. Plaintiff was not allowed any of these additional opportunities/positive and preferential treatment.

11. Causin deliberately kept plaintiff from succeeding by approving her stats on the Dashboard through various pretexts, including, but not limited to, requiring her to re-complete processes and slotting her into classes which negatively impacted her rank on the Dashboard.

12. Beginning in 2013, continuing until her termination, plaintiff applied for various positions for which she was rejected, allegedly because she did not have a college degree.

13. Caucasian males who did not have a college degree were promoted into management positions, including, but not limited to, Causin. Despite the fact that defendant had rejected plaintiff for this position, it directed plaintiff to sit on the interview panel of the Training Manager candidates, clearly demonstrating defendant's position that, while plaintiff was not qualified to even be allowed to interview for the position, on the other hand, defendant considered her so qualified that it asked her to participate in the ultimate selection for the position.

14. Numerous Caucasian applicants who had no experience as Trainer, and one who had no training experience at all, were granted interviews during spring/summer 2014 for the Training Manager position, while plaintiff, who had served for years as a Trainer, was not granted an interview.

15. Plaintiff subsequently attempted to apply for another administrative position; however, a young Caucasian, an Agent with far less managerial and administrative experience, was selected. There was never any interview or application process for this position prior to the selection of the Caucasian.

16. Defendant's policy is that an employee must wait six months after taking an assessment

and making a failing score, before retaking the assessment. However, Causin allowed several Caucasian employees to retake an assessment prior to the expiration of the six-month period, while he never permitted plaintiff to do so.

17. Defendant, through Causin, intentionally disciplined plaintiff for an action he knew was committed by another employee, "justifying" said action by claiming that plaintiff should have anticipated the employee who failed to perform her job responsibilities was going to fail to perform them and that plaintiff should have, therefore, anticipating the employee's failure, performed the job responsibilities herself. No such contrived disciplinary actions have been taken against Caucasian employees, based on the claimed failure to mind read.

18. Defendant's actions as set forth above demonstrate its clear intention and follow-up action to discriminate against plaintiff due to her race, African-American, and her sex.

19. Defendant's actions were committed intentionally and maliciously, which deliberate and malicious actions entitle plaintiff to punitive damages.

20. Defendant's actions constitute clear violations of Title VII. The racial and sexual harassment, and the hostile working environment these actions caused, have directly resulted in significant physical and psychological issues for plaintiff, including, but not limited to, stress, depression, and post-traumatic stress disorder ("PTSD").

21. The above violations approximately caused plaintiff to lose substantial monetary amounts, not only due to defendant's failure to promote plaintiff on numerous occasions, resulting in lost wages to plaintiff, but in its termination of plaintiff on January 7, 2016.

WHEREFORE, plaintiff prays that the Court award plaintiff:

1. Two Hundred Thousand Dollars ($200,000.00) as back wages, employee benefits, and

emotional distress for violation of Title VII;

    2. Two Hundred Thousand Dollars ($200,000.00) in punitive damages for violation of Title VII;

    3. Reasonable attorney's fees and costs expended herein; and

    4. Such other and different relief as may be deemed appropriate under the circumstances of this case.

                              ETHELOMA RENEE PERKINS
                              By Counsel

HILARY K. JOHNSON, P.C.
316 Valley Street NW
Abingdon, VA 24210
(276) 619-3740
fax - (276) 619-3742
VSB No. 20345

## JURY TRIAL DEMAND

**A jury trial is demanded in this matter.**