UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

ETHELOMA RENEE PERKINS,

    Plaintiff,

v.                                    Civil Action No. 1:17-02039

DISH NETWORK, LLC,

    Defendant.

## **MEMORANDUM OPINION AND ORDER**

### I.    INTRODUCTION

Plaintiff Etheloma Renee Perkins ("Plaintiff") brought this civil suit against Defendant DISH Network, LLC ("Defendant"). Plaintiff claims that during the course of her employment with Defendant, the latter discriminated against her on the impermissible bases of race and sex in contravention of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e, et seq. ("Title VII"). See Doc. No. 1.

Defendant has moved to dismiss this action, or in the alternative, to stay litigation and compel arbitration. See Doc. Nos. 6–7. Defendant so contends on the ground that at the outset of Plaintiff's employment, Plaintiff signed an Arbitration Agreement ("Agreement") expressly agreeing to resolve all disputes with Defendant through the formal and compulsory arbitration procedures the Agreement stipulates.

## II.  FEDERAL LAW

The FAA governs this case because it applies to arbitration agreements in most employment contracts.  Enacted in 1925, the FAA responded to the "hostility of American courts to the enforcement of arbitration agreements, a judicial disposition inherited from then-longstanding English practice."  <u>Circuit City Stores, Inc. v. Adams</u>, 532 U.S. 105, 111 (2001).  The FAA's coverage provision, § 2, states:

> [a] written provision in any maritime transaction or a contract evidencing a transaction <u>involving commerce</u> to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (emphasis added).  "[T]he FAA was enacted pursuant to Congress' substantive power to regulate interstate commerce and admiralty."  <u>Circuit City Stores</u>, 532 U.S. at 112 (citing <u>Prima Paint Corp. v. Flood & Conklin Mfg. Co.</u>, 388 U.S. 395, 405 (1967)).  "[T]he [FAA] was applicable in state courts and pre-emptive of state laws hostile to arbitration."  <u>Id</u>.  The Supreme Court has construed § 2 and particularly "the words 'involving commerce,' . . . as implementing Congress' intent 'to exercise

[its] commerce power to the full.'" Id.

Under prevailing Supreme Court precedent, Congress may regulate "the channels of interstate commerce," "persons or things in interstate commerce," and "those activities that substantially affect interstate commerce." United States v. Morrison, 529 U.S. 598, 609 (2000) (internal quotation marks omitted). The FAA goes exactly that far. The Supreme Court has observed that "the advantages of the arbitration process [do not] somehow disappear when transferred to the employment context." Circuit City Stores, 532 U.S. at 123. This is because "[a]rbitration agreements allow parties to avoid the costs of litigation, a benefit that may be of particular importance in employment litigation, which often involves smaller sums of money than disputes concerning commercial contracts." Id.

There is no doubt that Plaintiff's employment contract, dated September 20, 2008 until January 7, 2016, "involv[ed] commerce," within the Supreme Court's understanding. 9 U.S.C. § 2. Not only does Defendant conduct business in many interstate and foreign locations, a fact with which Plaintiff should have been acquainted from the outset of signing her Agreement, but Plaintiff herself admits that Defendant "sen[t] her to perform [her] duties . . . within and without the continental United

States," Doc. No. 1, including foreign locations. Some of these "locations included, but were not limited to, the Philippines in July and September 2013; to Mexico in September 2013; to Phoenix, Arizona, twice, one time being June 2014; and to Christiansburg, VA on two occasions, one being in January 2014." Id. Accordingly, the Agreement falls within the scope of the FAA, and Wood's third prong has been satisfied. It is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

The United States Court of Appeals for the Fourth Circuit has held that under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, a party can compel arbitration if it establishes: "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute." Am. Gen. Life and Accident Ins. Co. v. Wood, 429 F.3d 83, 87 (4th Cir. 2005) (citations and internal quotation marks omitted). This case requires the court to determine whether those prongs have been satisfied.

## III. ARBITRATION AGREEMENT'S TEXT

The text of this standard, boilerplate Agreement now comes into play. See Doc. No. 6-B. Of course, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Am. Recovery Corp. v. Computerized Thermal Imaging, 96 F.3d 88, 92 (4th Cir. 1996) (citations and internal quotation marks omitted). That said, FAA-centric federal policy instructs that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24—25 (1983). Some of the provisions are:

• Defendant will pay for the arbitrator and related arbitration fees and expenses;

• The substantive law of the state in which the employee works or last worked for Defendant will govern;

• The AAA procedural rules govern the arbitration;

• The location will be the city in which the employee works or last performed services for Defendant;

• The prevailing party in any arbitration pursuant to the Agreement will be entitled to attorneys' fees and costs; and

- The existence of the Agreement does not alter the at-will status of the employee.

Doc. No. 7; Doc. No. 6-A (Leyba Decl.).

The Agreement unambiguously states that "any claim, controversy and/or dispute between [Plaintiff and Defendant], arising out of and/or in any way related to [Plaintiff's] application for employment, employment and/or termination of employment, whenever and wherever brought, shall be resolved by arbitration." Doc. No. 6-B. There can be no serious dispute that the Agreement covers Plaintiff's employment dispute concerning racial and gender discrimination in the course of her employment and the opportunities denied. However, even if there were such doubts, the court would have to deploy a "heavy presumption of arbitrability"—"when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration"—and, thus, recognize that the Agreement covers Plaintiff's employment dispute. Levin v. Alms and Associates, Inc., 634 F.3d 260, 266 (4th Cir. 2011) (citation and internal quotation marks omitted). Thus, Wood's first prong has been satisfied.

Finally, Plaintiff claims that because the National Labor Relations Board ("NLRB") has held this Agreement to violate the National Labor Relations Act ("NLRA"), that should somehow

6

affect our FAA analysis too. See Doc. No. 10. This is false since the Supreme Court has construed the FAA to "require[] courts to enforce agreements to arbitrate according to their terms." CompuCredit Corp. v. Greenwood, 565 U.S. 95, 98 (2012). Such arbitration agreements must be held enforceable "unless Congress itself has [clearly] evinced an intention" to override the FAA's command. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985). What the NLRB perceives as consistent or inconsistent with the NLRA is its business, and not the court's.

## IV. WEST VIRGINIA CONTRACT LAW

The remaining question is whether any "grounds . . . exist at law or in equity for the revocation of [this] contract." Id. Such contractual defenses include laches, estoppel, waiver, fraud, duress, or unconscionability. The court shall consult applicable West Virginia law to make that determination.

### A. VALIDITY OF THE CONTRACT

Concerning the validity of this Agreement, no problems regarding laches, estoppel, waiver, fraud or duress are evident. West Virginia law is clear that in order for a valid contract to be formed, mutual assent must exist. New v. GameStop, Inc., 232 W. Va. 564, 572 (2013); Ways v. Imation Enterprises Corp., 214 W. Va. 305, 313 (2003). "In order for this mutuality to exist,

it is necessary that there be a proposal or offer on the part of one party and an acceptance on the part of the other. Both the offer and acceptance may be by word, act or conduct that evince the intention of the parties to contract. That their minds have met may be shown by direct evidence of an actual agreement . . ..." Ways, 214 W. Va. at 313 (citations and internal quotation marks omitted).  In West Virginia, "[t]he elements of a contract are an offer and an acceptance supported by consideration." Dan Ryan Builders, Inc. v. Nelson, 230 W. Va. 281, 287 (2012).

Defendant gave Plaintiff the Agreement containing all of its terms and conditions upon the commencement of Plaintiff's employment with Defendant. When Plaintiff signed the Agreement, she agreed to comply with the Agreement, including the arbitral provisions. See Doc. No. 6-A (Leyba Decl.). Thus, offer, acceptance and mutual assent existed in this Agreement. Additionally, adequate consideration existed since Defendant agreed to submit all employment disputes to arbitration. See id.; O'Neil v. Hilton Head Hosp., 115 F.3d 272, 275 ("A mutual promise to arbitrate constitutes sufficient consideration for [an] arbitration agreement."); Adkins v. Labor Ready, Inc., 303 F.3d 496, 501 (4th Cir. 2001) ("[Mutual] promise to arbitrate [their] claims is a fortiori adequate consideration for [an] agreement."); Johnson v. Circuit City Stores, 148 F.3d 373, 378

(4th Cir. 1998) ("[N]o consideration [is required] above and beyond the agreement to be bound by the arbitration process").

## B. UNCONSCIONABILITY

Plaintiff levels procedural as well as substantive unconscionability arguments. "The doctrine of unconscionability means that, because of an overall and gross imbalance, one-sidedness or lop-sidedness in a contract, a court may be justified in refusing to enforce the contract as written. The concept of unconscionability must be applied in a flexible manner, taking into consideration all of the facts and circumstances of a particular case." Syllabus Point 12, Brown v. Genesis Healthcare Corp., 228 W. Va. 646 (2011), overruled in part on other grounds, 565 U.S. 530 (2012). West Virginia law's "analysis of whether the arbitration agreement at issue is unconscionable necessarily involves an inquiry into the circumstances surrounding [its] execution and the fairness of [it] as a whole." New, 232 W. Va. at 576 (citations and internal quotation marks omitted). In fact, "[a] determination of unconscionability must focus on the relative positions of the parties, the adequacy of the bargaining position, the meaningful alternatives available to the plaintiff, and the existence of unfair terms in the contract." Id. (citations and internal quotation marks omitted).

With respect to procedural unconscionability, this doctrine in West Virginia law "involves a variety of inadequacies that results in the lack of a real and voluntary meeting of the minds of the parties, considering all the circumstances surrounding the transaction." Id. (citations and internal quotation marks omitted). Under state law, "[t]hese inadequacies include, but are not limited to, the age, literacy, or lack of sophistication of a party; hidden or unduly complex contract terms; the adhesive nature of the contract; and the manner and setting in which the contract was formed, including whether each party had a reasonable opportunity to understand the terms of the contract." Id. (citations and internal quotation marks omitted).

The Agreement was a contract of adhesion, as are "the bulk of contracts signed in this country." Id. at 577 (citations and internal quotation marks omitted). That does not inherently render a contract procedurally unconscionable. Plaintiff has offered no evidence that she suffered from any inadequacies that might have made the Agreement lop-sided in any meaningful sense. What is more, the fact that Plaintiff can observe today that, in her view, her qualifications and experience surpassed those whom Defendant hired for vacant positions indicates that Plaintiff suffered from no want of sophistication, literacy or inability

to comprehend the Agreement's terms.  See Doc. No. 1.  Nor are the Agreement's terms particularly abstruse or complex.  See Doc. No. 6-B.  Plaintiff also has not demonstrated that signing the Agreement was a Hobson's choice for her.  Under similar circumstances, West Virginia's highest court and this court have rejected unconscionability arguments.  See, e.g., New, 232 W. Va. at 578 ("The petitioner's bald assertions that the arbitration agreement is procedurally unconscionable because the agreement was not subject to negotiation and because she was unemployed and had no other 'meaningful alternatives available to her' other than to sign the Acknowledgment are simply not sufficient."); Montgomery v. Applied Bank, 848 F. Supp.2d 609, 616 (S.D.W. Va. 2012) (concluding that where plaintiff did not offer evidence "that she had no other alternative but to enter into a credit card agreement with ... defendant[,] ... [she] wholly fail[ed] to put forth any evidence that the Agreement was procedurally unconscionable other than her assertion that [it] was a contract of adhesion, which ... does not in itself make a contract procedurally unconscionable."); State ex rel. Clites v. Clawges, 224 W. Va. 299, 306 (2009) (determining that although arbitration agreement entered into upon plaintiff's employment was a contract of adhesion because the "entire Agreement is boiler-plate language that was not subject to negotiation and

there is no contention . . . that the Petitioner had any role or part in negotiating [its] terms[,]" the agreement was not unconscionable).

Substantive unconscionability "involves unfairness in the contract itself and whether a contract term is one-sided and will have an overly harsh effect on the disadvantaged party." Syllabus Point 19, Brown, 228 W. Va. at 646. Ordinarily, "courts should consider the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and public policy concerns." Id. "In assessing substantive unconscionability, the paramount consideration is mutuality." New, 232 W. Va. at 579 (citations and internal quotation marks omitted). Furthermore, "[a]greements to arbitrate must contain <u>at least a modicum of bilaterality</u> to avoid unconscionability." Id. (emphasis added; citations and internal quotation marks omitted). This Agreement carries the mutual assent to arbitrate and, therefore, does not give rise to "a disparity in the rights of the contracting parties such that it is one-sided and unreasonably favorable to one party." Id. (citations and internal quotation marks omitted).

\* \* \*

Consequently, as far as West Virginia law is concerned,

there is nothing unconscionable about this Agreement.  Thus, the entirety of Wood's second prong has been satisfied.  Lastly, Plaintiff has failed to arbitrate her claims.  She came straight to the federal courthouse.  Thus, Wood's fourth prong has been satisfied.  Even though Plaintiff now drops her objection to Defendant's Motion to Dismiss or Stay Proceeding Pending Arbitration, see Doc. No. 13, this opinion resolutely explains why Defendant has a right to compel arbitration.  This is to avoid future unfair prejudices against Defendant.

## V.   CONCLUSION

Accordingly, Defendant's Motion to Stay Litigation and Compel Arbitration is **GRANTED**.  The court **DENIES** Defendant's Motion to Dismiss.

The Clerk is **DIRECTED** to forward a copy of this Memorandum Opinion and Order to counsel of record.

**IT IS SO ORDERED** this 30th day of June, 2017.

                                ENTER:

                                _____
                                David A. Faber
                                Senior United States District Judge